# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEFTA ASSOCIATES, ULYSSES G. AUGER TRUST, AND LULU H. AUGER TRUST,** | : : : : | Civil No. 1:09-CV-2487 |
| | : | (Judge Jones) |
| Plaintiffs, | : : | (Magistrate Judge Carlson) |
| v. | : : | |
| **JACK F. HURLEY, JR., RHOADS & SINON, LLP, AND PAXTON LAND COMPANY,** | : : : : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.  Introduction

We have been called upon in this case to resolve a collateral aspect of some collateral litigation relating to this lawsuit. Specifically, we are charged with the responsibility of resolving an attorneys' fee dispute between a non-party bank, Citizens Bank of Pennsylvania, and the Defendants in this case. This attorneys' fees dispute arose in the context of a subpoena *duces tecum* which was served on the bank by the Defendants. That subpoena called for the production of substantial bank records, and the Defendants represent that they have agreed to reimburse the bank for more than $5,000 in direct expenses relating to this compelled production. What the Defendants contest, however, is their obligation to also reimburse the bank's legal

1

fees associated with this dispute concerning subpoena compliance, legal fees which are alleged to exceed $17,000.

For the reasons set forth below, we conclude that the Defendants should be required to reimburse the bank for the actual direct costs of production of this material, but will decline the bank's invitation to also assess attorneys' fees against the Defendants in this case.

## II.     Statement of Facts and of the Case

This collateral attorneys' fees dispute arises in the context of hotly contested civil litigation between the parties, litigation that flows out of a series of commercial lending transactions and loans related to Gateway Gettysburg, a multi-million dollar, multi-use development project in Gettysburg, Pennsylvania. In connection with the discovery in this case, the Defendants served a series of far-reaching, multi-faceted subpoenas *duces tecum* upon the various banks which had issued loans related to the Gateway Gettysburg project. These financial institutions included the Citizens Bank of Pennsylvania, which was served with a subpoena on November 22, 2010. That subpoena, issued by the Defendants, sought some 30 separate categories of material from the bank relating to various of the bank's loans.[1]

---

[1] According to the Defendants, all of the banks involved in this project were served by Defendants with subpoenas. Only Citizens Bank asserted that compliance with the subpoena would be unduly burdensome.

2

While the bank did not file objections to the subpoena within 14 days of service of the subpoena as required by the rules, see Fed.Civ.P.45(c)(2)(B), within 22 days the bank moved to quash the subpoena as unduly burdensome and requested reimbursement of its costs, including attorney's fees. (Doc. 50.) Confronted with the collateral dispute, the district court held a telephone conference on Citizens' Motion to Quash on December 15, 2010. As a result of that conference, Citizens Bank agreed to produce all responsive documents it possessed other than: (1) the actual loan documents; and (2) documents pertaining to any governmental or regulatory submission. The Defendants, in turn, agreed to a confidentiality arrangement under which all documents produced would be deemed confidential.

While the district court may have envisioned this mediated result would constitute the end of this collateral dispute, it did not. Instead, on February 24, 2011, Citizens Bank filed a motion for reimbursement of its costs of subpoena compliance, seeking reimbursement of $5,121.83 of copying costs, and $17,762.50 of attorneys' fees, for a total of $22,884.33. (Docs. 66 and 88, p. 2.) In some ways this motion appears to have reflected a very fundamental failure of communications between these litigants. According to Citizens Bank, these attorneys' fees of $17,762.50 consist of the costs of 100 attorney hours devoted to a document review that the bank conducted to determine privilege and relevance issues, "a task that Defendants'

attorneys would have had to perform had Citizens' counsel not done so." (Doc. 66, ¶21.) For their part, the Defendants assert that they never requested this service, did not benefit from it, and were never informed of these burgeoning legal fees by Citizens Bank prior to the filing of this motion, contentions which the bank does not seem to directly refute in its pleadings.

Presented with this additional, and renewed, demand for reimbursement from the bank, a demand that the bank characterizes as a "sanction", the district court entered an order which noted that: "To assist the parties in reaching an agreement concerning a reasonable scope of discovery from third party Citizens Bank of Pennsylvania, we conducted a telephone conference with all parties on December 15, 2010. Despite these efforts, in the instant motion Citizens Bank of Pennsylvania now seeks to recover attorney's fees and costs stemming from their compliance with a subpoena that they contend remains overly broad." (Doc. 67.) The district court then referred this fees dispute to the undersigned for resolution. (Id.)

Having been assigned to resolve this dispute, we directed the parties to submit briefs describing their respective positions on this matter.(Doc. 99.) The parties have complied with this briefing schedule, (Docs. 66, 100 and 102), and this fees dispute is now ripe for resolution.

### III. **Discussion**

Rule 45 of the Federal Rules of Civil Procedure governs subpoena practice in federal civil litigation. In its current form, Rule 45 places reciprocal obligations both upon persons issuing, and persons complying with, trial subpoenas. Thus, at the outset "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply." Fed.R.Civ.P.45(c)(1). A person commanded by subpoena to produce material, in turn, has a series of separate, but closely related, obligations. First, that subpoenaed party has an obligation to either promptly comply, or object, to the subpoena. Thus, "[a] person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection . . . . The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed .R.Civ.P.45(c)(2)(B). The subpoenaed party may also move to quash or modify a subpoena if compliance presents an "undue burden," Fed.R.Civ.P.45(c)(3)(A)(iv), and with respect to electronically stored information, "[t]he person responding need not provide discovery of electronically stored information from sources that the

person identifies as not reasonably accessible because of undue burden or cost. [However] [o]n motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost." Fed.R.Civ.P.45(d)(1)(D).

Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands. While this authority includes the power to order payment of "reasonable attorney's fees" in some instances, Fed.R.Civ.P.45(c)(1), it is well settled that decisions on matters pertaining to subpoena compliance rest in the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion. R.J. Reynolds Tobacco v. Philip Morris Inc, 29 F. App'x 880, 881 (3d Cir. 2002). This far-reaching discretion extends to decisions regarding how to enforce compliance with subpoenas, where " '[i]t is well-established that the scope and conduct of discovery are within the sound discretion of the trial court.' Guinan v. A.I. duPont Hosp. for Children, No. 08–228, 2008 WL 938874, at *1 (E.D.Pa. Apr.7, 2008) (quoting Marroquin–Manriquez v. INS, 699 F.2d 129, 134 (3d Cir.1983))." Coleman-Hill v. Governor Mifflin School Dist,. 271 F.R.D. 549, 552 (E.D.Pa. 2010).

This broad discretion, however, is guided by certain general principles. At the outset, when considering a motion to quash or modify a subpoena we are enjoined to keep in mind that the reach of a subpoena is defined by the proper scope of discovery in civil litigation. As one court aptly observed:

> Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure authorizes a court to quash or modify a subpoena that subjects a person to undue burden. Fed.R.Civ.P.45(c)(3)(A)(iv), 28 U.S.C. (1994); see Composition Roofers Union Local 30 Welfare Trust Fund v. Graveley Roofing Enter., 160 F.R.D. 70, 72 (E.D.Pa.1995)(Joyner, J.)(stating same). Accordingly, a court may quash or modify a subpoena if it finds that the movant has met the heavy burden of establishing that compliance with the subpoena would be "unreasonable and oppressive." Id. (citing Heat & Control, Inc. v. Hester Indus., 785 F.2d 1017, 1023 (Fed.Cir.1986)). [However, when assessing a motion to quash we must also consider the fact that] Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P.26(b)(1). Relevancy is to be broadly construed for discovery purposes and is not limited to the precise issues set out in the pleadings or to the merits of the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351,(1978). Rather, discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action.

Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D.Pa. Dec. 4, 1998). Thus, motions to quash must be viewed in light of the broad ambit of Rule 26's definition of what constitutes relevant evidence.

Similarly, when considering an invitation to impose attorneys' fees as sanctions upon a party that issued a subpoena, we begin our examination of this question with the admonition that:

> "Sanctions must, of course, be proportionate to the violation." Mid–Atlantic Constructors, 231 F.R.D. at 467 (holding that admonishment of counsel and the payment of attorney's fees for an intentional, bad faith violation of the subpoena power was proportionate). In determining which sanctions are appropriate, courts consider the resulting prejudice, the need for deterrence, and the furtherance of policy objectives. Id. Many sanctions (e.g. admonishment and compelling a party to file an affidavit) are liberally ordered by the court. Where a party's conduct goes beyond a "mere violation" of a discovery obligation, courts can impose additional, more severe sanctions. For instance, courts may impose attorney's fees as a sanction if the party acted "in bad faith, vexatiously, wantonly or for oppressive reasons."

Coleman-Hill v. Governor Mifflin School Dist, supra, 271 F.R.D. at 552-53 (citations omitted). Consistent with this principle of proportionality, and recognizing the broad scope of civil discovery which governs subpoena practice, it has been held that when considering sanction motions in this setting: "attorney fees are generally awarded only in the most egregious of circumstances, such as when a party has clearly breached Rule 45. See, e.g., Anderson v. Government of Virgin Islands, 180 F.R.D. 284, 291-292 (D.V.I. 1998) (granting attorney fees for repeat violations of Rule 45)." SAJ Distributors, Inc. v. Sandoz, Inc,. 2008 WL 2668953, *3 (D.N.J. June 27, 2008).

Thus, in practice, attorneys' fees awards have typically been reserved for two situations: First, fees have been awarded as sanctions but only in the most egregious of situations involving persistent or repeat offenders who abuse the court's subpoena power. See Anderson v. Government of Virgin Islands, 180 F.R.D. 284, 291-292 (D.V.I. 1998) (granting attorney fees for repeat violations of Rule 45). In addition, courts have held that "[a] nonparty's legal fees, *especially where the work benefits the requesting party*, have been considered a cost of compliance" and may be subject to reimbursement. In re Automotive Refinishing Paint, 229 F.R.D. 482, 496 (E.D. Pa. 2005)(emphasis added) (citations omitted). However, subject to these two exceptions, applying these legal benchmarks, courts have frequently exercised their discretion and refused to impose attorneys' fees as a sanction against a party that issued a subpoena. See, e.g., SAJ Distributors, Inc. v. Sandoz, Inc,. 2008 WL 2668953, *3 (D.N.J. June 27, 2008); Hampton Forge, Ltd. v. Descamps, No. 03-4500, 2006 WL 469953 (D.N.J. Feb. 23, 2006); Ginley v. E.B. Mahoney Builders, Inc., No. 04-1986, 2006 WL 266507 (E.D. Pa. Jan. 31, 2006); Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D. Pa. Dec. 4, 1998); Northwood Nursing & Convalescent Home, Inc. v. Continental Ins. Co., 161 F.R.D. 293 (E.D. Pa. 1995).

Judged against these standards, in the exercise of our discretion, we conclude that the Defendants should be obliged to pay the direct costs associated with this

subpoena compliance by the bank. Those costs have been calculated at $5,121.83, and are costs pertaining to activity which directly benefitted the Defendants in their pursuit of discovery in aid of this litigation. Therefore, this expense is properly assessed against the Defendants, a fact which the Defendants concede in their pleadings, which acknowledge a responsibility to pay these direct costs.

As for the bank's request for reimbursement of an additional $17,762.50 of attorney's fees, in the exercise of our discretion we will deny this request. We deny this request because we cannot find at this time that the bank, as movant, has carried its burden of showing that this is an instance in which "[a] nonparty's legal fees, *especially where the work benefits the requesting party*, [are properly] considered a cost of compliance" subject to reimbursement. In re Automotive Refinishing Paint, 229 F.R.D. 482, 496 (E.D. Pa. 2005). Simply put, the bank has not shown that these legal fees directly related to work which benefitted the requesting party. Quite the contrary, these fees appear largely related to efforts by the bank to protect its own interests in connection with its compliance with the subpoena, by independently reviewing these documents itself to determine claims of privilege it might assert. (Doc. 66, ¶21.) Indeed, in this setting, where the bank concedes that this attorney time was spent in large measure on a privilege review by the bank, it seems that the review

was done at the bank's instance to protect the bank's legal rights in connection with this compelled production.

Furthermore, we cannot find that this particular subpoena dispute presented "the most egregious of circumstances, such as when a party has clearly breached Rule 45. See, e.g., Anderson v. Government of Virgin Islands, 180 F.R.D. 284, 291-292 (D.Vi.1998) (granting attorney fees for repeat violations of Rule 45)." SAJ Distributors, Inc. v. Sandoz, Inc,. 2008 WL 2668953, *3 (D.N.J.. June 27, 2008). In this regard, we acknowledge that the subpoena was very broad in its sweep, but we also find that its breadth fell within Rule 26's expansive definition of relevant evidence, particularly as the scope of this subpoena was narrowed by the district court in its mediation conference with counsel in December 2010. Therefore, the reach of the subpoena, while sufficiently broad to justify reimbursement of the bank's direct expenses, was not so overreaching as to justify sanctions in the form of attorneys' fees. Therefore, in the exercise of our discretion, we will decline this invitation to impose attorneys' fees as a sanction in this matter. See e.g., SAJ Distributors, Inc. v. Sandoz, Inc,. 2008 WL 2668953, *3 (D.N.J.. June 27, 2008); Hampton Forge, Ltd. V. Descamps, No. 03-4500, 2006 WL 469953 (D.N.J. Feb. 23, 2006); Ginley v. E.B. Mahoney Builders, Inc., No. 04-1986, 2006 WL 266507 (E.D. Pa. Jan. 31, 2006); Wright v. Montgomery County, No. 96-4597, 1998 WL 848107, *2 (E.D.Pa. Dec. 4,

1998); Northwood Nursing & Convalescent Home, inc. v. Continental Ins. Co., 161 F.R.D. 293 (E.D. Pa. 1995).

**IV.   Conclusion**

For the forgoing reasons, the motions of Citizens Bank to Quash or Modify this subpoena (Doc. 50) and for Reimbursement of Costs (Doc. 66) are GRANTED, in part, and DENIED, in part, as follows:

1. Citizens Bank shall be reimbursed by the Defendants for its direct costs of compliance with this subpoena, $5,121.83 of copying costs.

2. Citizens Bank's request for $17,762.50 in attorney's fees is DENIED.

So ordered this 11th day of May, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge