IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEFTA ASSOCIATES, ULYSSES G. AUGER TRUST, AND LULU H. AUGER TRUST, | : : : : | 1:09-cv-2487 |
| Plaintiffs, | : : | |
| v. | : : | Hon. John E. Jones III |
| | | Hon. Martin C. Carlson |
| JACK F. HURLEY, JR., RHOADS & SINON, LLP, AND PAXTON LAND COMPANY, | : : : : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### September 27, 2012

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation

("R&R") of Magistrate Judge Martin C. Carlson (Doc. 181), filed on August 15,

2012, which recommends that Plaintiffs' Motion for Substitution, Joinder and

Ratification (Doc. 159) be granted to permit Lefta Associates, Inc. to be

substituted as the real party in interest for Lefta Associates, L.P., for the Lulu H.

Auger Trust be permitted to prosecute the claims of both the Lulu H. Auger Trust

and the Ulysses G. Auger Trust, and for Dina Economides, Frank Economides,

and Jeffrey Rogers to be submitted as the real parties in interest for the Lulu A. Auger Trust pursuant to Rule 17(a)(3). The Magistrate Judge also recommends that we grant the Defendants' Motion for Summary Judgment (Doc. 135) with respect to Plaintiffs' claim of unjust enrichment (Count V), but that we deny the Motion for Summary Judgment in all other respects.

The Defendants filed objections to essentially all of the Magistrate Judge's recommendations. The Plaintiffs filed a limited objection to the portion of the Magistrate Judge's discussion regarding the application of the statute of limitations to the Plaintiffs' legal malpractice claims. The objections have been briefed by the parties. Accordingly, the R&R is ripe for our review and disposition.

For the reasons that follow, we shall adopt the Magistrate Judge's recommendations in their entirety.

## I.   STANDARDS OF REVIEW

### A.   Review of Magistrate Judge's R&R

When objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may

accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B. Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2). An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985). However, the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the non- moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must

4

be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*,

477 U.S. at 247-48.

## III.   DISCUSSION

### A.   Factual Background

Magistrate Judge Carlson sets forth the undisputed facts giving rise to this

case in compelling detail at pages 1 through 14 of the R&R, thus we shall not

endeavor to repeat the facts herein, but shall provide a simple summary for the

benefit of the reader.  The Plaintiffs in this action became limited partners in five

Pennsylvania limited partnerships that were formed to facilitate the development

of Gateway Gettysburg.[1]  The projects were financed by multiple bank loans

specific to each aspect of the overall project.  Two of those loans are implicated in

this lawsuit: a $10.8 million dollar loan from Community Banks to fund

construction of a 10-screen movie theater ("Theater Loan") and a $3.9 million loan

from Community Banks to fund production of "Fields of Freedom" (the

"Production Loan").  The terms of both of these loans required the Plaintiffs to

provide guarantees to the lender.  In the course of negotiations with the bank and

---

[1] The Gateway Gettysburg project involved the construction of two hotels, two restaurants, a multi-screen movie theater on a 100-acre parcel of land in Adams County, Pennsylvania and the production of a movie about the Civil War battles in Gettysburg entitled "Fields of Freedom."

other partners, the Plaintiffs agreed to guaranty the loans, provided that the total

guaranty under both loans would be capped at 25% of the outstanding loan

obligations.  However, the closing documents ultimately did not contain this

limitation, but instead obligated the Plaintiffs to an aggregate 50% guaranty

obligation.

After Plaintiffs discovered that their guaranty obligations were 50% rather

than 25%, and after they allegedly began making payments under the guaranties in

2008, Plaintiffs brought this action on December 16, 2009 against the following

Defendants: Jack Hurley, Esq., a Harrisburg real estate lawyer who was involved

in providing lending counsel for the Gateway Gettysburg project, as well as

Hurley's law firm, Rhoads & Sinon, LLP, and an entity that Hurley controls called

Paxton Land Company.

In short, Plaintiffs allege that Hurley was serving as their lawyer in

connection with these loan negotiations and closings, and Plaintiffs claim that

Defendants are liable for (1) failing to obtain signed copies of certifications from

Community Banks clarifying that the Plaintiffs' collective obligation under these

loans was limited to 25% of the outstanding loan balances; and (2) delivering the

loan documents to Community Banks, and facilitating the loan closing, without

first obtaining copies of the certifications from the bank attesting to the 25%

guaranty cap to which the Plaintiffs agreed.  Based on these allegations, Plaintiffs

assert claims for legal malpractice, grounded in both tort and contract, against

Hurley and Rhoads & Sinon (Counts I, II), and for breach of contract (Count III,

IV).[2]

### B.      Motion for Substitution - F.R.C.P. 17(a)

As noted by the Magistrate Judge, Defendants contend in their summary

judgment papers that Plaintiffs - two trusts and a limited partnership - lack the

capacity to sue because the Plaintiffs have improperly sued in the name of the trust

and the partnership, rather than through the trustees and partners.  Plaintiffs

concede that naming the trusts and limited partnership as Plaintiffs rather than the

trustees and partners themselves is a pleading error, which they have now sought

to correct via a motion filed pursuant to Rule 17 of the Federal Rules of Civil

Procedure.  Defendants opposed this motion and also moved for summary

judgment based on lack of capacity of the trusts and limited partnerships to sue the

Defendants.

---

[2] Plaintiffs also asserted an alternative claim of unjust enrichment. Magistrate Judge
Carlson recommends summary judgment be granted in Defendants' favor on this claim.
Plaintiffs do not object to this recommendation by the Magistrate Judge, and accordingly we
shall adopt this recommendation without further analysis.

Magistrate Judge Carlson recommends that the Plaintiffs' motion to substitute be granted, reasoning that the interests of justice plainly militate in favor of permitting the substitution in a manner that would be purely formal.  The Magistrate Judge concludes that there was no unreasonable delay in making this request for substitution, and that it would have no material impact on the complaint's factual allegations so as to alter the events or the participants in this action.  In fact, the trustees and the partners were specifically identified in the complaint, but the caption did not contain their names. Accordingly, the Magistrate Judge recommends that we grant the Plaintiffs' motion to substitute and permit the matter to proceed with the individual trustees and partners as the Plaintiffs.

Defendants object to this recommendation, arguing that the Magistrate Judge focused too much of his analysis on a perceived lack of prejudice to the Defendants in permitting the requested substitution.  We disagree.  Simply put, Plaintiff's pleading error was substantively immaterial for purposes of this action, and the Defendants' attempts to achieve summary judgment based on such an error does not amount to much more than gamesmanship, in our view.  There is utterly no prejudice.  Accordingly, the Plaintiffs' motion to substitute shall be granted.

### C.    Motion for Summary Judgment

In his cogent 53-page R&R, Magistrate Judge Carlson analyzes the Defendants' Motion for Summary Judgment in careful detail and recommends that the Motion be substantially denied.  We agree entirely with the Magistrate Judge's conclusions, however, for the sake of completeness, we shall address some of the parties' objections warranting discussion within the following paragraphs.[3]

First, the Plaintiffs take issue the Magistrate Judge's application of the "occurrence rule" in his statute of limitations analysis on the Plaintiff's legal malpractice claims.  In Pennsylvania, claims for legal malpractice run from the moment of the alleged breach, however Pennsylvania law also recognizes an exception to the aforesaid "occurrence rule," known as the "discovery rule."  The "discovery rule," applies "when the injured party is unable, despite the exercise of diligence, to know of his injury or its cause."  *Knopick v. Connelly*, 639 F. 3d 600, 609 (3d Cir. 2011).  Plaintiffs contend that the "occurrence rule" does not apply in the context of transactional legal malpractice.  Rather, Plaintiffs submit that in a transactional legal malpractice action, where the negligence involves the drafting,

_____

[3] As set forth above, we may exercise our discretion to place whatever reliance we deem appropriate on the Magistrate Judge's analysis of the Defendants' Motion.  We have reviewed the R&R in careful detail in light of the parties' objections and find no reason to depart from Magistrate Judge Carlson's correct and thorough reasoning.

execution, or release of transactional documents, the action accrues when the

client suffers the harm because of the malpractice.   Thus, Plaintiffs desire to

preserve their argument that their cause of action did not accrue until the Plaintiffs

made their first payments on the guaranties.

While Plaintiffs' argument has some appeal at first blush, a review of the

well-settled and consistent case law in this Circuit and in Pennsylvania leads us to

the inescapable conclusion that the "occurrence rule" is applied to both

transactional legal malpractice and the more traditional type of legal malpractice

that occurs when a lawyer fails to file or appropriately prosecute case on behalf of

a client.    Thus, we decline the Plaintiffs' invitation to create a new legal

distinction that is not recognized by the jurisprudence of this Court or the Third

Circuit.[4]

We likewise overrule the Defendants' objection pertaining to the Magistrate

Judge's recommendation concerning Jack Hurley's alleged legal representation of

---

[4] By failing to sustain this objection we remind the Plaintiffs that ultimately we have not eviscerated their legal malpractice claims on statute of limitations grounds.  While it is true that the loans closed in 2005, thus triggering the accrual date under the "occurrence rule," the Plaintiffs are appropriately seeking the protection of the "discovery rule," and have at this juncture successfully argued, in a way to defeat the Defendants' summary judgment motion, that they were unaware of the alleged malpractice until either 2008 or 2009.  In making this observation we are necessarily rejecting the contention raised in the Defendants' objections that no disputed issue of fact exists as to whether the Plaintiffs exercised reasonable diligence in discovering the facts giving rise to their malpractice claim.  That determination will be made by the finder of fact.

the Plaintiffs.  Defendants argue in their summary judgment motion that the

undisputed facts demonstrate that Jack Hurley was *not* acting as counsel for

Plaintiff, thus neither he nor his law firm can be held liable for legal malpractice.

The Magistrate Judge carefully evaluated the record and determined that there are

sufficient facts from which a jury could reasonably conclude that he had

undertaken legal representation on their behalf.  We agree with the Magistrate

Judge on this point, specifically noting that Rhoads & Sinon spent over 60 hours

working on the partnerships in connection with the loans and billed the

partnerships nearly $11,000 in December 2005, the month of the closing, while

Richard Levin, Esq., who Defendants actually contend acted as counsel for the

Plaintiffs, only billed $1,650 to the Augers for this engagement.

Next, we address the Defendants' disagreement with Magistrate Judge

Carlson's application of *Bailey v. Tucker*, 621 A. 2d 108 (Pa. 1993) relative to

their arguments concerning Plaintiffs' prayer for consequential damages on their

contractual legal malpractice claim.  Defendants contend that Plaintiffs cannot

receive consequential damages, because damages on a contractual legal

malpractice claim are "limited to the amount actually paid for the services plus

statutory interest."  *Bailey* at 115.  Magistrate Judge Carlson agreed with the

Plaintiffs' counterargument – that *Bailey*'s strict limitation on recoverable

damages under a breach-of-contract theory applies only in the criminal context, wherein a claimant would only be entitled to receive the legal fees paid and no other type of compensation.  Thus, under Magistrate Carlson's view, *Bailey* should not be read as a sweeping limitation on damages that may be recovered in contract-based malpractice civil actions.  We agree, over the Defendants' objections, with Magistrate Carlson that *Bailey* should not be read so broadly.[5]

Finally, we consider the Defendants' contention that by restructuring the loans, the Plaintiffs have actually been benefitted and effectively negated any damages that they might have incurred had the loans not been restructured. Plaintiffs' response to this argument is that, by restructuring the loans, they were mitigating their damages, not divesting themselves of a legal remedy.  We agree with the Magistrate Judge that these matters should be presented to a jury, which can assess not only whether Hurley's alleged breaches were a substantial or significant factor in the Plaintiffs' claimed injury, but also the extent of those injuries, and whether some or all were mitigated through the restructuring in 2010.

---

[5] We also acknowledge, as did Magistrate Judge Carlson, that the matter of *Coleman v. Duane Morris LLP*, No. 0919, 2011 WL 5838278 (Pa. Com. Pl. Nov. 4, 2011) is currently before the Pennsylvania Superior Court and the decision rendered by that Court may address the proper reach and limits, if any, of *Bailey* in the civil context.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, the parties' objections are overruled and the R&R shall be adopted in its entirety.  The resolution of these objections clears a path for this case to be scheduled for trial, and we ask that the parties endeavor to settle on a trial month as ordered hereafter.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1.   The Report and Recommendation of Magistrate Judge Carlson (Doc. 181) is **ADOPTED IN ITS ENTIRETY.**

2.   The Defendants' Motion for Summary Judgment (Doc. 135) is **GRANTED** with respect to Plaintiffs' claim of unjust enrichment (Count V) and **DENIED** in all other respects.

3.   The Plaintiffs' Motion for Substitution, Joinder and Ratification (Doc. 159) is **GRANTED**.  Lefta Associates, Inc. is hereby substituted as the real party in interest for Lefta Associates, L.P., and the Lulu H. Auger Trust is permitted to prosecute the claims of both the Lulu H. Auger Trust and the Ulysses G. Auger Trust, and for Dina Economides, Frank Economides, and Jeffrey Rogers to be substituted as the real parties in interest for the Lulu A. Auger Trust pursuant to F.R.C.P. 17(a)(3).

3.      Within twenty (20) days of the date of this Order, the parties shall file

a letter or stipulation on the docket agreeing to a trial month within

the calendar year 2013.

<u>s/ John E. Jones III</u>
John E. Jones III
United States District Judge